# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DARRELL W. BUMPAS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:07-cv-0766 ) Chief Judge Haynes |
| MICHAEL RYAN, et al. | ) ) ) |
| Defendant. | ) |

## MEMORANDUM

Plaintiff, Darrell W. Bumpas, filed this action under 42 U.S.C. § 1983 against the Defendants: the Metropolitan Government of Nashville and Davidson County ("Metro"), and three police officers, Frederick Teague,[1] Michael Ryan, and Ernie Wilson. Plaintiff's claims arise from allegations that during Plaintiff's arrest, Defendants verbally and physically assaulted him without cause, sprayed him with pepper spray, as well as punched and kicked him in the head while Plaintiff was face down and handcuffed. Plaintiff also alleges that Metro is liable for its failure to train adequately the individual Defendants, Metro police officers. Plaintiff alleges that the Defendants' acts violated his rights under Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

In prior proceedings, the Court granted the Defendants' motion to dismiss this action,

---

[1] Plaintiff failed to serve Defendant Frederick Teague with process. After this action was pending for two years, Plaintiff filed a motion seeking to serve Vernon Teague with process. The Court denied that motion, concluding that the time for service of process had expired, and also denied Plaintiff's motion to add Vernon Teague as a Defendant in this action. (Docket Entry No. 142).

1

concluding: (1) that Plaintiff's guilty plea to evading arrest barred his excessive force claim under the Fourth Amendment; (2) that Plaintiff's guilty plea to criminal trespass and evading arrest barred his unlawful seizure claim under the Fourth Amendment; (3) that Plaintiff's Eight Amendment claim failed because he was not incarcerated during the incident; (4) that Plaintiff's Fourteenth Amendment claim failed because illegal search and seizure claims arise under the Fourth Amendment; and (5) that Plaintiff's claim against the municipality failed because Plaintiff's complaint lacked any allegations that the municipality should be liable for failure to train and supervise the police officers.

Plaintiff appealed contending that the police officers failed to provide adequate medical treatment for Plaintiff's injuries. (Docket Entry No. 197 at 3). The Sixth Circuit affirmed the dismissal of Plaintiff's illegal seizure and Eighth Amendment claims as well as Plaintiff's claim against Metro. Id. at 3-4. The Sixth Circuit, however, reversed the Court's ruling on Plaintiff's excessive force claim because Plaintiff's guilty plea to evading arrest did not bar his excessive force claim under Heck.[2] Id. at 4. The Sixth Circuit also cited that Plaintiff pled guilty only to avoiding arrest and criminal trespass and the State dismissed his resisting arrest charge. Id. at 5.

Before the Court are (1) Defendants' motion for summary judgment (Docket Entry No. 308); (2) Defendants' motion to strike affidavit (Docket Entry No. 335); and (3) Plaintiff's motion to amend his amended complaint (Docket Entry No. 363).

In their motion for summary judgment (Docket Entry No. 309), Defendants contend, in sum, that the Plaintiff's Fourth Amendment excessive force claim fails because Plaintiff cannot identify any wrongful acts that either Defendant Ryan or Wilson committed against him and that the Plaintiff

---

[2]Heck v. Humphrey, 512 U.S. 477, 486 n. 6 (1994).

cannot overcome the Defendant's qualified immunity defense. In response, Plaintiff contends that Defendants' motion for summary judgment should be denied because Plaintiff was kicked, punched, yelled at, and sprayed with chemical spray by the Defendant police officers while Plaintiff was face down on the ground, handcuffed and compliant with the officer's request. (Docket Entry No. 324 at 6).

In their motion to strike, Defendants contend that although Plaintiff identified Reginald Sims as a potential witness, Plaintiff should not be permitted to use Sims' affidavit because Sims failed to appear for his deposition. (Docket Entry No. 335). Plaintiff responds that he provided Defendants with Reginald Sims' information and Defendants failed to contact Sims.

In his motion to amend his amended complaint, Plaintiff seeks to correct Defendant Teague's first name to Vernon and to supplement his pleadings to conform to the evidence. (Docket Entry No. 363). In response, Defendants contend that the Court has already denied Plaintiff's previously filed motions to amend the complaint based upon the same theories that Plaintiff now asserts and that any amendment to the complaint would prejudice the Defendants. (Docket Entry No. 365).

For the reasons set forth below, the Court concludes that the Sims affidavit should be stricken for Sims' failure to appear at his deposition. The Court also concludes that Plaintiff's motion to amend his complaint should be denied because the Court previously denied Plaintiff's requests. The Court further concludes that the Defendants Ryan's and Wilson's motion for summary judgment on Plaintiff's excessive force claim should be granted except for material factual disputes that exist only on whether Plaintiff was face down and handcuffed when he suffered his injuries.

### I. Defendants' Motion to Strike Affidavit

In their motion to strike Reginald Sims' affidavit (Docket Entry No. 335), Defendants

contend that Plaintiff identified Sims as a potential witness, but Sims failed to appear for his deposition. Plaintiff submitted Sims' affidavit in opposition to the Defendants' motion for summary judgment. (Docket Entry No. 334). Defendants assert that "Plaintiff should not now be permitted to rely on the affidavit of a witness who[m] he apparently knew how to locate, but who did not appear for a duly-noticed deposition, to create a genuine issue of fact for summary judgment purposes." (Docket Entry No. 335 at 1). Moreover, Defendants assert that "a Defendant is entitled to receive such evidence, and digest it, during the discovery period prior to filing a summary judgment motion," citing Dedvukaj v. Equilon Enter., L.L.C., 301 F. Supp. 2d 664, 668 (E.D. Mich. 2004) aff'd Dedvukaj v. Equilon Enter., L.L.C., 132 Fed. Appx. 582 (6th Cir. 2005). In response, Plaintiff contends that the Defendants never subpoenaed Sims for a deposition nor contacted him in any way. (Docket Entry No. 341).

The Court concludes that "it is unreasonable to rely on affidavit 'evidence' from an individual who has made himself unavailable for discovery and for whom there is even no indication he will be available for trial." Dedvukaj, 301 F. Supp. 2d at 668. Accordingly, the Defendants' motion to strike the Sims affidavit should be granted.

## II. Plaintiff's Motion to Amend Complaint

As to Plaintiff's motion to amend his complaint, Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint should be freely given "when justice so requires." The Court, however, may deny a motion to amend a complaint when the amendment would be futile. Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000). An amendment is futile when it could not withstand a motion to dismiss. Thiokol Corp. v. Dept. of Treasury, State of Mich., Revenue Div., 987 F.2d 376, 382-83 (6th Cir. 1993). The Defendants

4

contend that Plaintiff's claims in the proposed amended complaint against the Defendant Teague are barred by the applicable statute of limitations, Tenn. Code Ann. § 28-3-104(a)(3), that is one year for actions brought under 42 U.S.C. § 1983. In response, Plaintiff contends that the Court did not dismiss his claims against Metro. (Docket Entry No. 369 at 1-2).

As to the Plaintiff's claims asserted against Metro, the Court concludes those claims are time barred under the applicable statute of limitations. In addition, the Sixth Circuit dismissed the Plaintiff's section 1983 claim against Metro. (Docket Entry No. 197). As to Plaintiff's proposed claims against Defendant Teague, any claims against Teague are for conduct occurring in 2006 and are time barred. This Court previously held that Plaintiff failed to serve Teague timely and dismissed Plaintiff's claims against Teague. (Docket Entry No. 142). The Court also previously found that Plaintiff's claims against Teague did not relate back under Fed. R. Civ. P. 15. (Docket Entry No. 242). Accordingly, the Court concludes that Plaintiff's motion to amend his complaint again should be denied.

### III. Defendants' Motion for Summary Judgment

### A. Review of the Record[3]

According to the Defendants' police reports that Plaintiff submitted, at 1:52 a.m. on July 16, 2006, Vernon Teague, a sergeant with the Metro Police Department observed Plaintiff walking with a bicycle in the area of 15th and Wedgewood in Nashville. (Docket Entry No. 324-1 at 26).

---

[3]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Court concludes that material factual disputes exist only on whether Plaintiff was handcuffed and face down when he sustained his injuries and to that extent, this section does not constitute findings of fact under Fed. R. Civ. P. 56(d).

According to Teague, there had been numerous bicycle thefts in that area and he turned his patrol vehicle to approach Plaintiff who then disappeared. Id. Defendant Wilson who was patrolling the area, observed Plaintiff running in the area of 14th Avenue and Horton Street. Id. Plaintiff kicked the door of a vacant apartment and entered the apartment. Id. With Wilson in the rear and Ryan joining Teague in the front of this apartment, the officers gave verbal commands for Plaintiff to exit the apartment. Id. According to Teague, Plaintiff responded: "fuck you, you motherfuckers will get shot." Id. Teague then describes a short foot chase during which the Defendant Ryan tackled Plaintiff. Id. Plaintiff refused to show his hands and attempted to stand when Ryan yelled "clear" and "directed a short burst of chemical spray about the {Plaintiff's] face." Id.

According to Teague, after the spraying, Plaintiff calmed down and apologized with the explanation that someone gave him the bicycle, he was on parole, was a sex offender and was receiving mental health treatment. Plaintiff also told the officers that his eyes were burning. Once inside a police vehicle, an officer rolled down the window and gave Plaintiff "the after care notice." Id. Ryan's report reflects that Plaintiff "complained of no injuries and had no prior injuries." (Docket Entry No. 324-1 at 28). Plaintiff was charged with evading and resisting arrest as well as aggravated criminal trespass. (Docket Entry No. 324-1 at 22, 23 and 29).

Medical records reflect that Plaintiff arrived at the emergency room of Correct Care Solutions at 3:30 a.m. and reported that he was "'beat up' during his arrest" and complained of "eye and right wrist pain." Id. at 20. Plaintiff's eye was "approx. half shut & blood noted from the corner of the eye to middle of eye and on right side of eye under eyelid. [right] wrist swollen, [with complaints] of numbness from wrist to all five digits. Two upper teeth appear to be missing." Id. The evaluation was an eye injury. Id. at 19. The "significant findings" were left "eye contusion" and the diagnosis was

"contusion lid edema." Id. A recommendation was made for transportation to the Metro Nashville General Hospital for an opthamology evaluation "ASAP." Id. at 19, 20.

Plaintiff testified at his deposition about where he was when he incurred his physical injuries from the officers.

> **Question:** So let me make sure I understand what you are saying then. You were handcuffed, laying on the ground with your head turned sideways, the officers walked away for 45 seconds, they then came back, and an officer who you can't described stood on your back, and after an officer stood on your back with one of their boots you were then sprayed in the face. Is that the correct sequence of events?
>
> **Plaintiff:** Yes.
>
> **Question:** Which officer sprayed you in the face?
>
> **Plaintiff:** I don't know. You're going to ask me the same questions. I don't know. I couldn't see. I was sprayed in the face with mace.
>
> **Question:** And it was after you were – had someone standing on your back and you were in handcuffs that someone put their boot on your head, right?
>
> **Plaintiff:** Correct.
>
> \* \* \*
>
> **Question:** Can you tell me which officer kicked you in the face?
>
> **Plaintiff:** No, I cannot. I didn't have my eyes. I couldn't see.
>
> **Question:** Can you tell me which officer picked you up from the ground?
>
> **Plaintiff:** It was two officers that picked me up from the ground. I was handcuffed from behind, so they grabbed both side of my elbows.
>
> **Question:** Can you tell me the two officers that picked you up?
>
> **Plaintiff:** No.
>
> **Question:** You couldn't see at that time either?

**Plaintiff:** No, I couldn't.

**Question:** When did you first – After you got sprayed when were you first able to see again?

**Plaintiff:** About a day or two later. Or two days later, because the lenses on my eyes were scratched up. My eyes were bleeding.

(Docket Entry No. 308-1, Plaintiff Deposition at 135, 137).

Ryan and Wilson deny striking Plaintiff with an object and deny using any mace after Plaintiff was in handcuffs. (Docket Entry Nos. 311 and 312, Ryan and Wilson Affidavits at ¶¶ 4-9). Ryan and Wilson also deny standing on Plaintiff's back, kicking Plaintiff in the face, using a closed hand to strike Plaintiff, and standing on Plaintiff's head. Id. There is not any medical evidence of any injury to Plaintiff's back or other parts of his head. Plaintiff's undated pictures of his face, reflect swollen eyes, but no other apparent injuries. (Docket Entry No. 324-1 at 30-33)

After his arrest, Plaintiff pled guilty to criminal trespass and evading arrest. (Docket Entry No. 310 at ¶ 3).

### B. Conclusions of Law

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee notes. Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court

explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact.
>
> **As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.** Factual disputes that are irrelevant or unnecessary will not be counted.

Id. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Electrical Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex</u>, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989); <u>see also</u> <u>Routman</u>, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the <u>Celotex</u> Court:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied

requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Sixth Circuit explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of `demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then `must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex, 477 U.S. at 322 and Rule 56(e)).

Once the moving party meets its initial burden, the Sixth Circuit warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion. . . . [and] must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby, 477 U.S. at 251, 255). Moreover, the Sixth Circuit explained that

> The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.'

Street, 886 F.2d at 1480 (citations omitted); see also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790 (6th Cir. 1990) (quoting Liberty Lobby, 477 U.S. at 151-52) ("A court deciding a motion for summary judgment must determine `whether the evidence presents a sufficient disagreement to

10

require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.").

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, **summary judgment will not lie if the dispute about a material fact is `genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.**
> \* \* \*
> Progressing to the specific issue in this case, we are convinced that **the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.** If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. **The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'**

Liberty Lobby, 477 U.S. at 248, 252 (citations omitted and emphasis added).

It is likewise true that

> [I]n ruling on motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Sixth Circuit stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d. 43, 46

(6th Cir. 1986) (citation omitted).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of."
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (citation omitted). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) (requiring each party to provide a statement of undisputed facts to which the opposing party must respond).

In Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989), the Sixth Circuit discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4.  This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.  A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6.  As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.  The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.  The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9.  The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Id. at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) whether the moving party "clearly and convincingly" established the absence of material facts; (2) if so, whether the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense; (3) if factual support is presented by the

13

nonmoving party, whether those facts are sufficiently plausible to support a jury verdict or judgment under the applicable law; and (4) whether there are any genuine factual issues with respect to those material facts under the governing law?

Plaintiff's excessive force claim is analyzed under the objective reasonableness standard of the Fourth Amendment to the United States Constitution. The objective reasonableness standard of the Fourth Amendment considers "the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." Fox v. DeSoto, 489 F.3d 227, 236 (6th Cir. 2007) (citing Graham v. Connor, 490 U.S. 386, 395-96 (1989)). Determining reasonableness requires "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396.

The Sixth Circuit applies a "segmented approach" to excessive force claims that examines the police officers' acts at the moment immediately preceding the officer's use of force. See Claybrook v. Birchwell, 274 F.3d 1098, 1103–04 (6th Cir.2001); Dickerson v. McClellan, 101 F.3d 1151, 1160-62 (6th Cir.1996). This approach applies even to short time encounters. Claybrook, 274 F.3d at 1102, 1105 (one to two minute encounter). The Sixth Circuit's rationale is that,

> Other than random attacks, all [excessive force] cases begin with the decision of a police officer to do something, to help, to arrest, to inquire. If the officer had decided to do nothing, then no force would have been used. In this sense, the police officer always causes the trouble. But it is trouble which the police officer is sworn to cause, which society pays him to cause, and which, if kept within constitutional limits, society praises the officer for causing.

Dickerson, 101 F.3d at 1161 (quoting Plakas v. Drinski, 19 F.3d 1143, 1150 (7th Cir.1994)).

Here, the undisputed facts are that Plaintiff evaded arrest and disobeyed the officers'

14

commands to exit the vacant apartment that he unlawfully entered. Plaintiff does not dispute his obscene response to the officers that included a reference to shooting the officers. Thus, applying the segmented approach to these claims, the officers' use of force, including the short burst of pepper spray, against Plaintiff was justified. The medical records do not reflect any injuries nor Plaintiff's complaint of injuries to his back nor does Plaintiff's face exhibit any injuries beyond his eyes. The documented injury to Plaintiff's left eye is swelling of his eyelid with traces of blood. Yet, a material factual dispute exists on whether Defendants caused the injuries to Plaintiffs's eyes after Plaintiff was handcuffed and placed on the ground.

Defendants contend that Plaintiff's inability to name the individual offending officers entitles them to summary judgment on Plaintiff's claim. In analyzing the Plaintiff's excessive force claim, the Court must "evaluate the liability of each [officer] individually." Marmelshtein v. City of Southfield, 421 Fed. Appx. 596, 601 (6th Cir. 2011) (quoting Bishop v. Hackel, 636 F.3d 757, 767 (6th Cir. 2011)). "It is well established that a plaintiff cannot recover in a § 1983 action if he does not identify the officer that caused the alleged deprivation of his constitutional rights." Kilgore v. City of Cincinnati, No. 1:05-cv-00256, 2006 WL 1580224, at *3 (S.D. Ohio June 5, 2006) (granting summary judgment to defendants because the plaintiff could not articulate specific allegations with respect to individual defendants) (citing Thornton v. Spooner, 872 F.2d 1029, 1989 WL 34026 (6th Cir. Mar. 21, 1989); Dist. Council 47, Am. Fed'n of State, Cnty. & Mun. Employees v. Bradley, 795 F.2d 310, 315 (3d Cir. 1986); and Hill v. Agor, 85 F.Supp.2d 391, 405 (D.N.J. 2000)). In Marmelshtein, the Sixth Circuit found that the record only supported the Plaintiff's failure to knock claim against one of the officer defendants because the record only specifically named one defendant as "knock[ing], annouc[ing], and ram[ming] the door open." 421 Fed. Appx at 603.

Yet, the Court concludes that this action is distinguishable from the decisions that Defendants cite because the identifies of the officers at the scene of Plaintiff's arrest are undisputed. In Thronton, the Sixth Circuit awarded summary judgment because the plaintiff was unable to identify the officers, who were all white, because the plaintiff identified the alleged perpetrator as African American. 1989 WL 34026 at *3. The Court deems it noteworthy that the Seventh Circuit in Miller v. Smith, 220 F.3d 491 (7th Cir. 2000), held that the district court erred in granting summary judgment to the Defendants when the Plaintiff was unable to identify his assailant(s) while he was lying face down on the ground in handcuffs. Id. at 495. Given that the officers have a duty to prevent unnecessary force, the Seventh Circuit held that even if one of the officers did not strike the plaintiff, that officer could be held liable for failing to stop the officers who did strike the plaintiff. Id.

Although the Defendants deny all of Plaintiff's statements that the striking, punching, and kicking occurred when he was face down on the ground in handcuffs and unable to see the perpetrators. Plaintiff's medical records reflect his eye injuries and contusion. A reasonable jury could find that Plaintiff suffered these injuries in the course of the officers' lawful seizure of him or that Plaintiff was a victim of excessive force after he was handcuffed and face down on the ground. The Court cannot make credibility determinations on a motion for summary judgment and concludes that Plaintiff's excessive force claim based on events after the handcuffing should be not be dismissed due to material factual disputes.

These factual disputes also preclude an award of qualified immunity. Hanson v. City of Fairview Park, 349 Fed. Appx. 70, 76 (6th Cir. 2008) (" The district court considered the evidence and argument properly before it, found material issues of fact in dispute, identified those disputed issues, and denied the officer's claim of qualified immunity on that basis. "This kind of order ... is

not appealable." Johnson v. Jones, 515 U.S. 304, 313 (1995)) (Batchelder, C.J., concurring).

Accordingly, Defendants' motion for summary judgment should be granted as to all use of force prior to Plaintiff's handcuffing and placement on the ground, but denied as to any excessive force after Plaintiff was handcuffed and placed on the ground..

An appropriate Order is filed herewith.

**ENTERED** this the 3rd day of June, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DARRELL W. BUMPAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:07-cv-0766 |
| | ) | Chief Judge Haynes |
| | ) | |
| MICHAEL RYAN, et al. | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

In accordance with the Memorandum filed herewith, the Defendants' motion to strike Sims' affidavit (Docket Entry No. 335) is **GRANTED**; the Plaintiff's motion to amend the complaint (Docket Entry No. 363) is **DENIED**; and the Defendants' motion for summary judgment (Docket Entry No. 308) is **GRANTED** as to all use of force prior to Plaintiff's handcuffing and placement on the ground, but is **DENIED** as to any excessive force after Plaintiff was handcuffed and placed on the ground.

It is so **ORDERED**.

ENTERED this the 2nd day of June, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court